OPINION
{¶ 1} Appellant, Sharon A. Davis, appeals the judgment entered by the Lake County Court of Common Pleas. Davis was convicted of theft from a disabled adult.
 {¶ 2} From March 2005 through January 2007, Elizabeth Berger resided at an assisted living facility called the Lantern in Madison, Ohio. In January 2007, Berger moved from the Lantern into a nursing home.
 {¶ 3} Berger was diagnosed with multiple sclerosis in 1992. By the time she was living at the Lantern, the disease had progressed to the point where Berger could *Page 2 
not walk and used a wheelchair to move around. In addition, she needed assistance getting dressed and using the restroom.
 {¶ 4} The Lantern offered transportation services for its residents to a local Wal-Mart store. Berger received a $100 Wal-Mart gift card from her daughter and son-in-law. Berger stored the card in a glass case, which she kept in her purse. She used the gift card for a purchase of $50.91 at Wal-Mart, leaving a balance of $49.09. When Berger attempted to use the card a second time, she was informed the balance on the card was only $7.91.
 {¶ 5} Berger contacted the police regarding the suspected misuse of her gift card. Officer William Hodakievic of the Madison Township Police Department investigated the situation. He went to the Wal-Mart store and met with Brian Vandernack, the manager of the Madison Wal-Mart store. By reviewing the transaction history of Berger's gift card, Officer Hodakievic discovered a transaction was made for $41.91 on May 29, 2006, at 3:12 p.m., at register number two. Officer Hodakievic and Vandernack reviewed the store's surveillance video from that date. The video showed that a woman wearing a blue shirt used Berger's gift card. Officer Hodakievic took a still photograph from the video and asked Berger to identify the woman in the blue shirt. Berger indentified the woman as Davis, an employee of the Lantern.
 {¶ 6} Detective Timothy Doyle of the Madison Township Police Department assisted Officer Hodakievic with the investigation. Detective Doyle and Officer Hodakievic went to the Lantern and informed Davis about the incident. The officers advised Davis of her Miranda rights and then transported her to the police station. At the police station, Davis waived her Miranda rights and was interviewed by the officers. Davis told the officers that she cared for Berger at the Lantern. Also, upon being *Page 3 
questioned by Detective Doyle, Davis admitted that she did not have permission to use Berger's gift card. Later, in response to the officers' specific questions about the incident, Davis provided responses such as, "`I don't remember taking the card, but just say I did'" or "`I don't remember buying chicken and shoes, but just say I did.'" Finally, Davis provided a written statement to the officers. Therein, Davis states she does not remember taking or using the gift card. However, she also apologizes to her family, fellow employees, and her boss and offers to repay the money.
 {¶ 7} As a result of this incident, Berger was indicted on one count of theft from a disabled adult, a fifth-degree felony, in violation of R.C. 2913.02(A)(1). Berger pled not guilty to this charge, and a jury trial was held.
 {¶ 8} The state presented testimonial evidence from Berger, Officer Hodakievic, and Detective Doyle. Following the state's case-in-chief, Davis moved for acquittal pursuant to Crim. R. 29. The trial court denied this motion. Davis testified on her own behalf. She testified that Berger gave her the gift card as reimbursement for items that Davis had purchased for Berger. In addition, Richard West and Robin Riser testified as character witnesses for the defense. After the defense rested, Davis renewed her Crim. R. 29 motion, which the trial court again denied. The jury found Davis guilty of theft from a disabled person.
 {¶ 9} The trial court sentenced Davis to one year of community control with several conditions, including: Davis serve 30 days in jail; Davis perform 100 hours of community service; Davis pay Berger $41 in restitution; and Davis pay the costs of the action and any supervision fees pursuant to R.C. 2929.18.
 {¶ 10} Davis has timely appealed the trial court's judgment entry of sentence. Davis filed a motion with the trial court to stay the execution of her sentence pending *Page 4 
her appeal. The trial court denied this motion. Thereafter, Davis filed a motion to stay the execution of her sentence pending her appeal with this court. This court granted her motion, on the condition that Davis post a $2,500 supersedeas bond, "for which a ten percent deposit will suffice."
 {¶ 11} Davis raises two assignments of error. Her first assignment of error is:
 {¶ 12} "Mrs. Davis' conviction for theft from a disabled person is against the sufficiency and/or weight of the evidence presented at trial."
 {¶ 13} A trial court shall grant a motion for acquittal when there is insufficient evidence to sustain a conviction. Crim. R. 29(A). When determining whether there is sufficient evidence presented to sustain a conviction, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus, following Jackson v. Virginia
(1979), 443 U.S. 307.
 {¶ 14} Davis was charged with theft from a disabled person, in violation of R.C. 2913.02, which provides, in pertinent part:
 {¶ 15} "(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
 {¶ 16} "(1) Without the consent of the owner or person authorized to give consent[.]"
 {¶ 17} In addition, R.C. 2913.02(B)(3) provides, in part:
 {¶ 18} "Except as otherwise provided in division (B)(4), (5), or (6), (7), or (8) of this section, if the victim of the offense is an elderly person or disabled adult, a violation *Page 5 
of this section is theft from an elderly person or disabled adult, and division (B)(3) of this section applies. Except as otherwise provided in this division, theft from an elderly person or disabled adult is a felony of the fifth degree."
 {¶ 19} Initially, we will examine whether the state presented sufficient evidence as to whether Davis used Berger's gift card without her consent. Berger testified that she did not give Davis permission to use the gift card. The state presented still pictures from the surveillance camera showing Davis using the gift card. In addition, Davis initially denied any recollection of using the card, then later, at trial, claimed she used it, but had permission. Accordingly, the state presented sufficient evidence that Davis used Berger's gift card without her permission.
 {¶ 20} Next, we will address whether the state presented sufficient evidence as to whether Berger was a "disabled adult." R.C. 2913.01(DD) defines the term "disabled adult" as follows:
 {¶ 21} "`Disabled adult' means a person who is eighteen years of age or older and has some impairment of body or mind that makes the person unable to work at any substantially remunerative employment that the person otherwise would be able to perform and that will, with reasonable probability, continue for a period of at least twelve months without any present indication of recovery from the impairment, or who is eighteen years of age or older and has been certified as permanently and totally disabled by an agency of this state or the United States that has the function of so classifying persons."
 {¶ 22} At trial, the state conceded that there was no evidence presented that Berger had been certified as disabled by any agency. Therefore, the jury was only instructed on the first part of the instruction, relating to whether Berger was unable to *Page 6 
work "at any substantially remunerative employment" due to her condition and circumstances.
 {¶ 23} We acknowledge that the state did not present any separate testimony regarding the effect of Berger's condition and circumstances on her ability to work. However, there was substantial circumstantial evidence presented regarding this element. The Supreme Court of Ohio has held that "`circumstantial evidence and direct evidence inherently possess the same probative value and therefore should be subjected to the same standard of proof.'" State v. Biros (1997), 78 Ohio St.3d 426,447, quoting State v. Jenks, 61 Ohio St.3d 259, paragraph one of the syllabus.
 {¶ 24} The state presented evidence that Berger was diagnosed with multiple sclerosis in 1992. Berger testified that, as a direct result of the progression of her disease, she cannot walk and is confined to a wheelchair. Davis notes that many individuals in wheelchairs are gainfully employed. While this may be true, Berger testified that she also needs assistance getting dressed and using the restroom.
 {¶ 25} Further, we note that Berger resided in an assisted living facility at the time of the offense. Berger testified that she resided at the assisted living facility because she needed help getting dressed and using the restroom. The fact that Berger was unable to attend to the day-to-day necessities of living independently suggests that she was likewise unable to hold "substantially remunerative employment."
 {¶ 26} Berger testified about the physical limitations multiple sclerosis places on her, including the lack of use of her legs. Further, she lived in an assisted living facility at the time of the offense. We note that Davis was one of Berger's direct caretakers and, therefore, was aware of Berger's infirmities. *Page 7 
 {¶ 27} When this evidence is taken together and viewed in a light most favorable to the state, we conclude that the state presented sufficient evidence that would support a finding from a trier-of-fact that Berger was "unable to work at any substantially remunerative employment that the person otherwise would be able to perform and that will, with reasonable probability, continue for a period of at least twelve months without any present indication of recovery from the impairment." Finally, the trial court properly instructed the jury as to the definition of "disabled adult" to establish the elements of the offense.
 {¶ 28} Davis' conviction was supported by sufficient evidence.
 {¶ 29} In determining whether a verdict is against the manifest weight of the evidence, the Supreme Court of Ohio has adopted the following language as a guide:
 {¶ 30} "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" State v. Thompkins (1997), 78 Ohio St.3d 380, 387. (Citations omitted.)
 {¶ 31} In this matter, Berger and Davis testified to substantially different versions of events regarding the gift card. Berger testified that she did not give Davis permission to use the gift card. Davis testified that Berger gave her the gift card as reimbursement for items that Davis had purchased for Berger. Thus, there was conflicting testimony regarding the key issue of this case, i.e., whether Davis had permission to use the gift card. *Page 8 
 {¶ 32} We note the weight to be given to the evidence and the credibility of witnesses are primarily matters for the trier-of-fact to decide. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. Also, in assessing the witnesses' credibility, the jury, as the trier-of-fact, had the opportunity to observe the witnesses' demeanor, body language, and voice inflections. State v. Miller (Sept. 2, 1993), 8th Dist. No. 63431, 1993 Ohio App. LEXIS 4240, at *5-6. Thus, the jury was "clearly in a much better position to evaluate the credibility of witnesses than [this] court." Id.
 {¶ 33} After hearing all of the evidence presented, the jury gave more credence to Berger's version of the events. We cannot say the jury lost its way or created a manifest miscarriage of justice. Thus, the jury's verdict was not against the manifest weight of the evidence.
 {¶ 34} Davis' first assignment of error is without merit.
 {¶ 35} Davis' second assignment of error is:
 {¶ 36} "The trial court erred in permitting the statement made by Mrs. Davis to the police to be read before the jury, and then presented to the jury as an exhibit during their deliberations."
 {¶ 37} Davis does not contest the admission of her statement. Instead, Davis argues that the presentation of a written copy of her statement to the jury was error because the jury could have placed more emphasis on the statement than on the other evidence.
 {¶ 38} "The admission of evidence lies within the broad discretion of a trial court, and a reviewing court should not disturb evidentiary decisions in the absence of an abuse of discretion that has created material prejudice." State v. Noling, 98 Ohio St.3d 44, 2002-Ohio-7044, ¶ 43, citing State v. Issa (2001), 93 Ohio St.3d 49, 64. "The term *Page 9 
`abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." State v. Adams (1980), 62 Ohio St.2d 151, 157.
 {¶ 39} The state cites to the Supreme Court of Ohio's opinion inState v. McGuire (1997), 80 Ohio St.3d 390, where the court held, "there is no error in allowing the jury to view or hear for a second time an exhibit properly admitted into evidence." (Citations omitted.) Id. at 396. Further, the court held, "sending properly admitted evidence into jury deliberations rests within the sound discretion of the trial judge." Id.
 {¶ 40} In this matter, we conclude that the trial court did not abuse its discretion by sending a written copy of Davis' statement to the jury room. The statement was properly admitted as an exhibit and, thus, was appropriately considered by the jury.
 {¶ 41} Davis' second assignment of error is without merit.
 {¶ 42} The judgment of the trial court is affirmed.
 {¶ 43} The stay of execution of sentence issued May 11, 2007 is hereby dissolved.
 DIANE V. GRENDELL, P.J., CYNTHIA WESTCOTT RICE, J., concur. *Page 1